UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH TIERNEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:21CV828 JAR |
| | ) | |
| HALLS FERRY PIZZA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff Joseph Tierney's Motion for Summary Judgment [ECF No. 77]. Defendant Halls Ferry Pizza, Inc., filed its response in opposition to Plaintiff's Motion. This matter is fully briefed and ready for disposition. For the reasons set forth below, Plaintiff's Motion for Summary Judgment will be granted in part and denied in part.

### Background

On July 9, 2021, Plaintiff Joseph Tierney filed this action for violations of overtime pay under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219, and the Missouri Minimum Wage Law (MMWL), Mo. Rev. Stat. §§ 290.500, et seq., against Defendant Halls Ferry Pizza, Inc., which owns and operates an Imo's Pizza franchisee store in St. Louis, Missouri. Plaintiff alleges that while he was employed by Defendant as a pizza delivery driver, Defendant failed to pay him the required minimum wage and overtime pay, failed to accurately make and maintain records of delivery drivers' hours worked, and failed to reimburse him for vehicle/mileage expenses.

Plaintiff filed the instant motion seeking summary judgment on issues regarding the number of hours he worked for Defendant, overtime and minimum wage pay, FSLA's "tip

credit" application, vehicle/mileage reimbursement as wages, statute of limitations, and liquidated damages. Plaintiff attached a Statement of Material Facts to his Motion, which Defendant responded to and noted its oppositions. Defendant filed its response in opposition. Defendant filed a Statement of Additional Uncontroverted Material Facts, which Plaintiff responded to and noted his oppositions. The parties each attached exhibits with their respective memoranda.

## Facts

The following facts are taken from Plaintiff's Statement of Material Facts [ECF No. 78] and Defendant's Statement of Additional Uncontroverted Material Facts [ECF No. 85] and are undisputed, unless otherwise noted:

Defendant operates a single Imo's Pizza franchisee store, located at 1192 Riverview Boulevard in St. Louis, Missouri. Yuriy Ostrovskiy is Defendant's President and directly manages the store when present. Ostrovskiy has managers who are in charge of other employees, but these managers in turn report to him. Ostrovskiy makes all hiring and firing decisions, as well as scheduling decisions. Ostrovskiy determines payroll, which he does on a weekly basis, and he is responsible for his own human resources matters.

It is undisputed between the parties that Plaintiff was a covered, non-exempt employee of Defendant and Defendant was similarly Plaintiff's employer.[1] Plaintiff's duties as a pizza delivery driver for Defendant was to deliver the customers' orders, collect money, and drive back using his personal vehicle. The drivers are required to have licensed and insured vehicles.

---

[1] Plaintiff's Motion argues for a summary judgment finding that Plaintiff was a covered, non-exempt employee of Defendant, and Defendant was similarly his employer for purposes of the FLSA. Defendant does not dispute this, and thus, no genuine issue of material fact remains. Therefore, the Court grants summary judgment in favor of Plaintiff on this issue.

Defendant has never provided any of its own vehicles to its drivers. Defendant did not track or record automobile expenses incurred by drivers during the statutory period.

Ostrovskiy made the schedules for Defendant's employees by placing it on a clipboard. A schedule of 10 A.M. to 10 P.M. or 10 A.M. to 5 P.M. was a typical shift for the drivers. The store usually opened before 11 A.M. Employees could request off or make other scheduling requests, and Ostrovskiy would make notes if they were late or missed a day on the schedule. Ostrovskiy kept track of the drivers' time by their schedule. Ostrovskiy kept this scheduling paperwork for some period of time and then shredded it. No schedules were located at the office for the statutory period here.

Since 2017, Defendant has paid payroll to drivers on a weekly basis.  Prior to November 6, 2019, drivers were paid $2.50 per delivery plus tips. On November 6, 2019, this was changed to $3.00 per delivery plus tips. At all points during the statutory period, drivers who took multiple deliveries on one trip were paid those amounts for each delivery. Defendant has always reimbursed drivers separately for second and/or third deliveries on the same trip and for "unsuccessful" deliveries (e.g., deliveries in which the customer was not home, did not pay, etc.) during the statutory period.

Defendant did not track actual mileage driven by its drivers. Defendant paid $15 per shift plus $1 per delivery to compensate for mileage/automobile expenses during most of the statutory period. The methodology was developed by Ostrovskiy to ensure drivers were paid at least 2.5 miles per delivery.

During their shift, drivers would sign in on the computer to take their first delivery through the Firefly/Thrive Point-of-Sale system. These first clock-ins to get their first pizza would be reflected on the driver ticket reports produced by Thrive. The driver ticket report

3

reflects when a driver returned from his/her last delivery before being paid out and leaving. The driver ticket reports show when the orders are placed, when the drivers leave, and when they come back.

The Driver Ticket Report columns are depicted below [ECF No. 78-6 at 8]

**JOE Tierney** Driver Close Report

| Ticket # | Order Time | Dispatch Time | Return Time | Delivery Time (MM SS) | Ticket Total | Driver Fee | Tip Amt | Tender Type | Server Name | Customer Name | Customer Address |
|---|---|---|---|---|---|---|---|---|---|---|---|

Another report, the Driver Performance Report, shows the total number of deliveries, fees, and tips. Cash tips collected by drivers are not reflected on this report.

Defendant's secretary, Maria Clark, testified by deposition as the designated corporate representative for Defendant and discussed its Delivery Performance Report for 12/24/2018 to 12/30/2018, as depicted below [ECF No. 78-5 at 1]:

| Name | Total Sales | Total Delivery | Total Trips | Total Dispatch Time(min) | % of Shift | Av. Orders Per Trip | Total Fees | Total Tips | Total Drops | Total Mileage | Av. Times Per Trip (min) | Av. Delivery Times (min) | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Julian Hampton | $1707.10 | 65 | 19 | 876.87 | 0 00% | 3.42 | $162.50 | $47.20 | $0.00 | 0 00 | 46.15 | 1 Order | 43.33 |
| | | | | | | | | | | | | 2 Order | 48.78 |
| | | | | | | | | | | | | 3 Order | 56.54 |
| Daniel Kranz | $5030.12 | 191 | 66 | 2511.88 | 0 00% | 2 89 | $477.50 | $200.00 | $0.00 | 0 00 | 38 06 | 1 Order | 32.91 |
| | | | | | | | | | | | | 2 Order | 34.53 |
| | | | | | | | | | | | | 3 Order | 52.47 |
| ILYA LEVENTAS | $242.52 | 9 | 2 | 116.75 | 0 00% | 4 50 | $22.50 | $5 00 | $0.00 | 23.50 | 58 38 | 1 Order | 0 00 |
| | | | | | | | | | | | | 2 Order | 0 00 |
| | | | | | | | | | | | | 3 Order | 58.38 |
| Timothy Nelson | $2750.34 | 106 | 27 | 1427 63 | 0 00% | 3 93 | $265.00 | $9 00 | $0.00 | 0 00 | 52 88 | 1 Order | 45.59 |
| | | | | | | | | | | | | 2 Order | 42.38 |
| | | | | | | | | | | | | 3 Order | 63.11 |
| Y O | $938.84 | 37 | 12 | 472.82 | 0 00% | 3 08 | $92 50 | $8 00 | $0.00 | 71.65 | 39.40 | 1 Order | 48.87 |
| | | | | | | | | | | | | 2 Order | 29.66 |
| | | | | | | | | | | | | 3 Order | 34.78 |
| SEMON SEMEND | $3732.45 | 149 | 47 | 1196.32 | 0 00% | 3.17 | $372.50 | $50.00 | $0.00 | 0 00 | 25.45 | 1 Order | 23.84 |
| | | | | | | | | | | | | 2 Order | 23.37 |
| | | | | | | | | | | | | 3 Order | 32.51 |
| JOE Tierney | $5102.20 | 199 | 91 | 1563 63 | 0 00% | 2.19 | $497.50 | $34.48 | $0.00 | 0 00 | 17.18 | 1 Order | 15.40 |
| | | | | | | | | | | | | 2 Order | 18.84 |
| | | | | | | | | | | | | 3 Order | 23.33 |
| Averages | $2786.22 | 108.00 | 37.71 | 1166.56 | 0.00% | 3.31 | $270.00 | $50.53 | $0.00 | 13.59 | 39.64 | 1 Order | 29.99 |
| | | | | | | | | | | | | 2 Order | 28.22 |
| | | | | | | | | | | | | 3 Order | 45.87 |

The first column has the name of the drivers. "Total Delivery" shows the total number of deliveries performed during the week by the driver. The "Total Fee" is 2.50 times the "Total Delivery" number. The "Total Trips" are the amount of times the delivery driver left the store,

including the number of deliveries they took with them on each trip. The "Total Tips" reflect the total credit card tips for the week, not counting cash tips.

In a given week, Plaintiff received a paycheck, and separately he was paid for delivery charges and tips. These components comprised his total compensation. Ostrovskiy created the reimbursement methodology that forms the amount paid on the paycheck to Plaintiff.

Plaintiff's pay stub for the same week discussed above, 12/24/2018 to 12/30/2018, is depicted below [ECF No. 78-4 at 25]:

| Employee Pay Stub | | Check number: 2242 | | Pay Period: 12/24/2018 - 12/30/2018 | | Pay Date: 01/02/2019 |
|---|---|---|---|---|---|---|

Employee
JOSEPH D TIERNEY, 619 CARSON RD, ST LOUIS, MO 63135

| Earnings and Hours | Qty | Rate | Current | YTD Amount |
|---|---|---|---|---|
| DRIVER HOURLY | 32.50 | 6.00 | 195.00 | 195.00 |
| Tips | | | 111.70 | 111.70 |
| | 32.50 | | 306.70 | 306.70 |

| Taxes | Current | YTD Amount |
|---|---|---|
| STL | -3.07 | -3.07 |
| Medicare Employee Addl Tax | 0.00 | 0.00 |
| Federal Withholding | -24.00 | -24.00 |
| Social Security Employee | -19.02 | -19.02 |
| Medicare Employee | -4.45 | -4.45 |
| MO - Withholding | -2.00 | -2.00 |
| | -52.54 | -52.54 |

| Adjustments to Net Pay | Current | YTD Amount |
|---|---|---|
| TIP & HOURLY DEDUCTION | -306.70 | -306.70 |
| Vehicle Reimbursement | 323.64 | 323.64 |
| | 16.94 | 16.94 |

| Net Pay | 271.10 | 271.10 |
|---|---|---|

Clark testified to the contents of this pay stub in detail, as summarized below:

At the top it shows Plaintiff's name, Joseph Tierney, and shows a pay period of 12/24/2018 to 12/30/2018. There is a section called "Earnings and Hours," and below that, a category called "Driver Hourly." The quantity reflects 32.50 at a $6.00 rate, which equals $195. However, Plaintiff was not paid this $195 in hourly wages for that week because he was paid nightly for delivery charges and tips. The number 32.5 was manually generated into this pay stub by Ostrovskiy using the schedule. Clark stated that she had no explanation for small variances in the hours reflected on the paystubs. Clark does not know how Ostrovskiy was arriving at the .25

or .5 portions of an hour for the pay stubs. She does not know how Ostrovskiy was adding up the week exactly, but he told her that he didn't have them clock in. Ostrovskiy used the schedules to determine the drivers' hours.

The next line, "tips," goes across to current and shows $111.70. Clark noted that the total tips for Plaintiff on the Delivery Performance Report for the same week shows $34.48. Clark explained that these numbers are different between the pay stub and the Driver Performance Report simply because Ostrovskiy put a different number on there, and he put a different number for the delivery fees too. The $497.50 doesn't match the $195. The number $111.70 on the pay stub was derived or created, because Ostrovskiy thought he was following the franchise guidelines and put minimum wage at $6.00 an hour for their part for their hourly and less than whatever the rate was back then in tips. He put more in tips than the real tips that Plaintiff received, and he put less than Plaintiff actually collected in fees. Clark speculated that the number Ostrovskiy made up to put there has something to do with the hours he put on there, so that it would come up to at least minimum wage at that time. Thrive's actual amounts that Plaintiff took home doesn't match what Ostrovskiy put on the QuickBooks pay stub. The $111.70 figure is a made-up number that was not actually paid to the driver.

The total tax amount reflected in the pay stub is -$52.54. The company paid this amount into Social Security, Federal Withholding, Medicare, Missouri, and Clark handles those payments.

The next part of the pay stub says "Adjustments to Net Pay" and there's a "Tip and Hourly Deduction." On this pay stub, it shows the number -306.70. This number is created by adding the driver hourly, which here is $195, and the tips, $111.70, which is $306.70. The driver did not actually take that amount home. This is just listed on the paycheck to be able to pay taxes

out of the driver's pay. The number -306.70 represents essentially cancels out of the driver hourly and tips that's shown up in the columns above that.

The next line states "Vehicle Reimbursement," which reflects the amount of $323.64 for this pay period. Lastly, there's a Net Pay that is $271.10. This was the amount paid to the driver out of the company's bank account after deducting taxes. That amount was sent to Plaintiff as check number 2242.

Referring back to the Driver Performance Report for this same week, it reflects that total fees were $497.50, plus $34.48 for credit card tips. These numbers are all different from what is reflected on the paystub. For this particular week, the company paid Plaintiff $271.10 plus $497.50 plus $34.48. This totals $803.08 for this week of work.

Throughout the statutory period, Ostrovskiy believed he was doing overtime correctly until he learned from Tony, the director of Defendant, that he needed to change the way he was doing it. To make sure they are doing it correctly, they spoke with someone at a wage and hour regulatory agency to find out what the correct method is in 2022. Defendant now pays additional money to all employees working over 40 hours in a workweek.

During his deposition, Plaintiff was unable to say whether he was paid less than minimum wage during pay periods. Although Plaintiff had a few past work schedules in his possession, he did not keep an overall record of the hours he worked. Plaintiff did not keep track of the mileage he drove during his shifts. Plaintiff sometimes received cash tips from customers. He did not keep a record of the amount of cash tips that he received because he was never asked to. However, he remembers that it wasn't very much. His estimation of the range of tips that he would receive was one-in-four deliveries paying a few dollars if he was lucky. Around the holidays, customers tended to be more generous.

**Legal Standards**

<u>Summary Judgment</u>

"Summary judgment is proper where the evidence, when viewed in a light most favorable to the non-moving party, indicates that no genuine [dispute] of material fact exists and that the moving party is entitled to judgment as a matter of law." *Davison v. City of Minneapolis, Minn.*, 490 F.3d 648, 654 (8th Cir. 2007); Fed. R. Civ. P. 56(a). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Id.* "The basic inquiry is whether it is so one-sided that one party must prevail as a matter of law." *Diesel Machinery, Inc. v. B.R. Lee Industries, Inc.*, 418 F.3d 820, 832 (8th Cir. 2005) (internal quotation marks and citation omitted). The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (citation omitted). Once the moving party has met its burden, "[t]he nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts and must come forward with specific facts showing that there is a genuine issue for trial." *Id.* (internal quotation marks and citation omitted).

<u>Overtime Wages</u>

FLSA requires covered employers to compensate non-exempt employees at overtime rates for time worked in excess of forty hours per workweek. *See* 29 U.S.C. § 207(a)(1). "Overtime rate" is defined as "a rate not less than one and one-half times the regular rate at which [an employee] is employed." *Id.* An employee's "regular rate" is defined by the FLSA as including "all remuneration for employment paid to, or on behalf of, the employee . . ." 29

U.S.C. § 207(e).  "Premium rate[s] paid for work by the employee on Saturdays, Sundays, holidays, or regular days of rest, or on the sixth or seventh day of the workweek," are included in the regular rate, unless "such premium rate is not less than one and one-half times the rate established in good faith for like work performed in nonovertime hours on other days." 29 U.S.C. § 207(e)(6). "The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109. The DOL's regulations provide that, for overtime purposes, "a tipped employee's regular rate of pay includes the amount of tip credit taken by the employer per hour." 29 C.F.R. § 531.60.

<u>MMWL</u>

The MMWL is interpreted in accordance with the FLSA, and the regulations promulgated thereunder; the following discussion applies fully to both the FLSA and MMWL claims.  Mo. Rev. Stat. § 290.505(4); *Tolentino v. Starwood Hotels & Resorts Worldwide, Inc.*, 437 S.W.3d 754, 757 n.3 (Mo. banc 2014).

The MMWL requires that an employer pay its employees a regular rate of pay that meets or exceeds the applicable minimum wage rate of at least $10.30 per hour after January 1, 2021, $9.45 per hour between January 1, 2020 and December 31, 2020, $8.60 per hour between January 1, 2019 and December 31, 2019, and $7.85 per hour between January 1, 2018 and December 31, 2018. Mo. Rev. Stat. § 290.502.

"To establish a violation of the minimum wage requirements of the FLSA, a plaintiff . . . must demonstrate that he was engaged in compensable activity within the meaning of the statute and that the wages received for that activity, if any, were below the statutory minimum wage."

*Hensley v. MacMillan Bloedel Containers, Inc.*, 786 F.2d 353, 355 (8th Cir. 1986).  The meaning of compensable activity was summarized by the Eighth Circuit as follows:

> [A]n employee's time is "work" for the purposes of the FLSA if it is spent "predominantly for the benefit of the employer." *Armour [& Co. v. Wantock],* 323 U.S. [126,] 133[]. The [Supreme] Court noted that in some such cases "facts may show that the employee waited to be engaged" and therefore was not working. *Skidmore [v. Swift & Co.]*, 323 U.S. [134,] 137–38[]. The Court stressed that the lower courts should take a "practical approach based on the realities of each case...." *Armour,* 323 U.S. at 133, 65 S.Ct. 165.

*Reimer v. Champion Healthcare Corp.*, 258 F.3d 720, 725 (8th Cir. 2001) (original alterations omitted).  Whether some activity is compensable is case dependent, and courts must rely on Department of Labor (DOL) regulations and case law, when applicable, in making its determination.  *Id.*

### Discussion

Plaintiff argues he is entitled to summary judgment on the following: (i) he worked more than forty hours in at least one workweek and was not paid any premium rate for such work time; (ii) he worked an indisputable number of hours establishing a basis for overtime damages and defendant's failure to pay him minimum wage in certain workweeks, and Defendant is not entitled to FSLA's "tip credit;" (iii) his "paycheck" should be classified as wages for purposes of calculating his regular rate of pay; (iv) the amount of his overtime damages is readily determinable; and (v) the statute of limitations is three years from the date of filing of the lawsuit, and he is entitled to an award of liquidated damages.

<u>Hours Worked</u>

In an action for overtime wages under the FLSA, "the burden is upon the plaintiff to establish by a preponderance of the evidence the number of hours worked and the amount of damages due." *Albers v. Tri-State Implement, Inc.,* 2010 WL 960010, at *13-14 (D.S.D. Mar. 12,

10

2010) (quoting *Johnson v. Dierks Lumber & Coal Co.,* 130 F.2d 115, 118 (8th Cir. 1942)).

"When the employer has kept proper and accurate records the employee may easily discharge his

burden by securing the production of those records." *Anderson v. Mt. Clemens Pottery Co.*, 328

U.S. 680, 687 (1946) (superseded by statute on other grounds). But "[w]here an employer has not

kept adequate records of wages and hours, its employees cannot be penalized by being denied a

recovery of back wages on the ground that the precise extent of their uncompensated work

cannot be proved." *Dole v. Tony and Susan Alamo Found.*, 915 F.2d 349, 351 (8th Cir. 1990)

(citing *Mt. Clemens*, 328 U.S. at 687–88). Thus, when the employer's records are inaccurate or

inadequate, [o]nly a just and reasonable inference need be established as to the uncompensated

work performed, and once the plaintiff has produced evidence of uncompensated labor, "[t]he

burden then shifts to the employer to come forward with evidence of the precise amount of work

performed or with evidence to negative [sic] the reasonableness of the inference to be drawn

from the employee's evidence." *Id.* (quoting *Mt. Clemens*, 328 U.S. at 687–88). If the employer

fails to produce such evidence, the court may award damages to the employee even though the

result may be only approximate. *Donovan v. Tony and Susan Alamo Found.*, 722 F.2d 397,

404 (8th Cir. 1983); *Albers,* 2010 WL 960010, at *13-14.

Plaintiff argues that Defendant did not keep full and accurate records of the hours that he

worked. However, Plaintiff contends that there is no dispute about the amount of hours that he

worked because the Delivery Performance Reports, Driver Ticket Reports and Plaintiff's

paycheck stubs are evidence of his hours worked and uncompensated labor. For instance,

Plaintiff uses the workweek from July 9, 2018 to July 15, 2018 to illustrate his point. Plaintiff's

Statement of Material Facts, ECF No. 84 at ¶ 50. Plaintiff contends he worked 43.55 hours, and

he received $570.00 in fees, $85.00 in tips, and $333.54 in "a paycheck." Only counting fees, the

11

regular rate was $13.09 per hour ($570.00 fees/43.55 hours) and the overtime rate was $6.54 per hour (1/2 of $13.09 regular rate) in addition to the regular rate. Plaintiff claims his unpaid overtime wages would be $23.23 (3.55 hours x $6.54 overtime rate).

Defendant argues Plaintiff ignores the most important report in his calculation, which is the Driver Payroll Reports from Defendant's payroll system, attached to its response [ECF No. 86-2 at 1].[2] This report tracks the time from when a driver was dispatched on his first delivery and ends when the drivers get back from his last one.

The Driver Payroll Report from the same workweek mentioned above, July 9, 2018 to July 15, 2018, is illustrated below:

**Imos Pizza Riverview**
**Driver Payroll Report**
Report is for 07-09-2018 - 07-15-2018
Report ran: 03-02-2023, 12:18 AM

| Name | Total Delivery | Total Trips | Av. Orders Per Trip | Total Fees | Total Tips | Total Mileage | Dispatch Hours | In House Hours | Total Hours |
|---|---|---|---|---|---|---|---|---|---|
| Julian Hampton | 47 | 24 | 1.96 | $117.50 | $2.00 | 0.00 | 21.53 | -21.53 | 0.00 |
| Daniel Kranz | 84 | 35 | 2.40 | $210.00 | $27.00 | 0.00 | 18.23 | -18.23 | 0.00 |
| Timothy Nelson | 68 | 29 | 2.34 | $170.00 | $14.52 | 0.00 | 18.58 | -18.58 | 0.00 |
| Y O | 9 | 5 | 1.80 | $22.50 | $5.00 | 37.70 | 2.93 | -2.93 | 0.00 |
| SEMON SEMEND | 292 | 130 | 2.25 | $730.00 | $95.19 | 0.00 | 52.98 | -52.98 | 0.00 |
| JOSHUA SWARTS | 36 | 15 | 2.40 | $90.00 | $2.00 | -1111.00 | 8.21 | -8.21 | 0.00 |
| JOE Tierney | 228 | 119 | 1.92 | $570.00 | $85.00 | 0.00 | 37.54 | -37.54 | 0.00 |
| Averages | 109.14 | 51.00 | 2.15 | $272.86 | $32.96 | -153.33 | 22.86 | -22.86 | 0.00 |

*Id.*

Defendant argues the column labeled "Dispatch Hours" is an accurate amount of the hours worked by drivers. Here, it shows Plaintiff only worked 37.54 hours, approximately six hours less than he says he worked. Defendant further explains the amount of hours entered in QuickBooks did not determine how many hours drivers were paid. Defendant used QuickBooks for tax withholding purposes and to pay vehicle reimbursement to drivers. If the Driver Payroll

---

[2] Plaintiff filed a Motion to Strike this attachment, labeled as Exhibit B, as well as portions of Defendant's Exhibit A (Clark's Declaration), which the Court denied in its March 15, 2023 Order [ECF No. 93].

Report is used to calculate Plaintiff's hours instead of the documents he relied on, that would significantly change the total calculations made by Plaintiff for the statutory period.

The Court first finds that Defendant failed to keep an accurate record of Plaintiff's hours worked. The parties present differing records that they are relying on to make the argument about Plaintiff's hours worked. However, all the records relied on by the parties are Defendant's records. The discrepancy between Defendant's own reporting documents clearly show that Defendant failed to keep an accurate record of Plaintiff's hours worked. The Court also finds Plaintiff met his burden to establish his uncompensated work performed, and the burden shifts to Defendant to "come forward with evidence of the precise amount of work performed or with evidence to negative [sic] the reasonableness of the inference to be drawn from the employee's evidence." *Dole,* 915 F.2d at 351 (citing *Mt. Clemens*, 328 U.S. at 687–88).

However, Defendant offers evidence with the Driver Payroll Reports to explain the discrepancy between the amount of hours Plaintiff calculated that he worked and the amount of hours Defendant paid him for. The credibility of that explanation cannot be determined by the Court on a motion for summary judgment. On a motion for summary judgment the Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.,* 210 F.3d 845, 847 (8th Cir. 2000). As this presents an issue of fact for determination by the factfinder, Plaintiff's motion for summary judgment on this issue will be denied.

<u>Calculation of Minimum Wage and Overtime Pay and "Tip Credit"</u>

Next, Plaintiff claims that he was not always paid minimum wage, he worked more than forty hours in at least one work week, and it is indisputable that Defendant did not pay him the required overtime pay rate for those hours exceeding forty hours. Plaintiff also contends that

Defendant did not inform him of the FLSA's tip credit provisions, which would negate Defendant's ability to take a tip credit for purposes of calculating minimum wage and overtime pay. Defendant argues there is a genuine issue of material fact regarding whether Defendant is entitled to a "tip credit" for purposes of calculating minimum wage and overtime pay. The Court agrees with Defendant.

The FLSA requires employers to pay a minimum hourly wage. *See 29* U.S.C. § 206(a)(1). Section 203(m) carves out an exception to the FSLA minimum wage requirement, allowing an employer to take a "tip credit" under certain conditions. 29 U.S.C. § 203(m)(2)(A); 29 C.F.R. § 531.59. The "wage" paid to a "tipped employee" is defined as the sum of (1) the cash wage paid to the employee, which must be at least the minimum cash wage that was required to be paid to tipped employees ("cash wage"), and (2) an additional amount based on the tips received by the employee that is equal to the difference between the amount of the cash wage and the current rate required by § 206(a)(1). *See* 29 U.S.C. § 203(m) (defining "wage"); *Fast v. Applebee's Int'l, Inc.,* 638 F.3d 872, 876 (8th Cir. 2011). The amount required by paragraph (2) is commonly referred to as the "tip credit" because "it allows the employer to avoid a larger cash payment to the employee" as long as the employee's tips make up the difference between the amount of the cash wage and the current minimum wage. *Fast,* 638 F.3d at 876.

This tip credit is not automatic. An employer may only take the tip credit if it: (1) pays a cash wage; [3] (2) *informs its employees of the FLSA's tip credit provisions*; (3) permits its employees to retain all their tips; and (4) ensures that the cash wage plus the tip credit equal at

---

[3] In Defendant's Response, it asserts Plaintiff argues Defendant did not pay a "cash wage" of at least half minimum wage. In Plaintiff's Reply brief, he confirms that he is not making an argument that Defendant failed to pay him a "cash wage."

least the minimum wage each week. 29 U.S.C. § 203(m) (emphasis added). The DOL's regulations also state that, pursuant to 29 U.S.C. § 203(m), employers are not eligible to take a tip credit unless they have informed employees in advance of "[t]he amount of the cash wage that is to be paid to the tipped employee by the employer [and] the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer...." 29 C.F.R. § 531.59(b). "An employer does not have to give its employees a rigorous explanation of how the tip credit works; rather, it is enough to inform them of it." *Perrin v. Papa John's Int'l, Inc.*, 114 F. Supp. 3d 707, 712 (E.D. Mo. 2015) (quoting *Garcia v. Koning Restaurants Int'l*, L.C., 2013 WL 8150984, at *4 (S.D. Fla. May 10, 2013)). "[A]n employer who invokes a statutory exemption from minimum wage liability bears the burden of proving its qualification for that exemption." *Lockett v. Pinnacle Entm't, Inc.,* 2021 WL 960424, at *5 (W.D. Mo. 2021) (quoting *Myers v. Copper Cellar Corp*., 192 F.3d 546, 549 n.4 (6th Cir. 1999).

In its response, Defendant argues that it did inform its drivers of the "tip credit." In support, Defendant submitted a declaration of Corporate Representative Clark that stated, under penalty of perjury, that "[n]ew drivers, when hired, were told that tips would be listed on their paystub, would be taxed, and would be part of their earnings, to ensure they were paid at least minimum wage." ECF No. 86-1 at 2. Defendant argues that if it is determined that Plaintiff's calculations should include a "tip credit," Plaintiff cannot show that the minimum wage and overtime requirement were not met. Plaintiff argues in his reply that Clark's declaration is contrary to her prior deposition testimony, is hearsay within hearsay, and the information was not timely disclosed during the discovery period. Plaintiff's arguments do not justify a summary judgment finding in his favor. Although Clark's Declaration, without more, is insufficient to

satisfy Defendant's burden to show that it informed him of the provisions of the FLSA's "tip credit," it is enough to preclude summary judgment for Plaintiff on this issue and is more appropriately reserved to the jury for determination of credibility.

Mileage Reimbursement

The next issue is whether there is a genuine dispute about if Plaintiff's "paychecks" should be classified as wages and count toward unpaid overtime. Plaintiff argues that money paid to him in his "paycheck" should be classified as wages for purposes of calculating Plaintiff's regular rate of pay. Defendant argues the "paycheck" amount Plaintiff refers to is strictly for mileage, which was issued on a separated check and reimbursed at the Internal Revenue Service (IRS) standard mileage rate and should not be considered wage compensation.

Under the statute, an employer is required to pay "wages" at minimum rates. *See* 29 U.S.C. § 206(a). "Wages" is defined to include the reasonable cost to the employer of furnishing "board, lodging, or other facilities" if customarily furnished to employees, *see id*. § 203(m), but the statute does not address an employer's reimbursement of expenses. Because the text of the FLSA's minimum wage provisions does not aid in resolving this question, the Court turns to the interpretive DOL regulations concerning the payment of "wages," which may be found at Part 531 of Title 29 of the Code of Federal Regulations. *See* 29 C.F.R. § 531.2 (scope of Part 531 includes interpretation of the FLSA definition of "wages" in Section 203(m)); see also *Spradling v. City of Tulsa, Okla.,* 95 F.3d 1492, 1495 (10th Cir. 1996) ("Generally, DOL regulations are entitled to judicial deference, and are the primary source of guidance for determining the scope and extent of exemptions to the FLSA.")

The FLSA requires minimum wages to be paid "free and clear" of job-related expenses. 29 C.F.R. § 531.35. The FLSA's anti-kickback regulation prohibits payment arrangements that

16

shift part the employer's business expense to its employees when doing so reduces an employee's wages below the statutory minimum. *Id.* Section 531.35 provides an example of such an improper kick-back and concludes with a reference to 29 C.F.R. § 531.32(c). "For example, if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act. See also in this connection, § 531.32(c)." *Id.*

Section 531.32(c), in turn, explains that "the cost of furnishing 'facilities' which are primarily for the benefit or convenience of the employer will not be recognized as reasonable and *may not therefore be included in computing wages*." *Id.* § 531.32(c) (emphasis added). The regulation then provides additional examples of items that have been held to be primarily for the benefit or convenience of the employer, including "transportation charges where such transportation is an incident of and necessary to the employment." *Id*. Section 531.32(c) concludes with a reference to Section 778.217. *Id.* ("For a discussion of reimbursement for expenses such as 'supper money,' 'travel expenses,' etc., see § 778.217 of this chapter."). Section 778.217 restates the general rule found in Section 531 that an employer's payments to its employees for expenses incurred on the employer's behalf *cannot* be counted towards compensation:

> Where an employee incurs expenses on his employer's behalf or where he is required to expend sums solely by reason of action taken for the convenience of his employer, section 7(e)(2) [which provides that employee's regular rate does not include travel or other expenses incurred in furtherance of the employer's interest] is applicable to reimbursement for such expenses. Payments made by the employer to cover such expenses *are not included in the employee's regular rate* (if the amount of the reimbursement reasonably approximates the expenses incurred). *Such payment is not compensation for services rendered by the employees during any hours worked in the*

*workweek.*

*Id.* § 778.217(a) (emphasis added).

Whether a payment is excludable from an employee's regular rate of pay pursuant to FLSA under the reimbursement exception depends on the payment's function, that is, whether it functions as compensation for work or as reimbursement. *Senne v. Kan. City Royals Baseball Corp.*, 591 F. Supp. 3d 453, 506 (N.D. Cal. 2022). Many districts have founds that "[p]ersonal car[s] that...employee[s] operate[ ] to make pizza deliveries" qualify as tools of the trade under 29 C.F.R. § 531.35. *See, e.g., Benton v. Deli Mgmt., Inc.,* 396 F. Supp. 3d 1261, 1273 (N.D. Ga. Aug. 8, 2019); *Graham v. Word Enterprises Perry, LLC,* 2018 WL 3036313, at *4 (E.D. Mich. June 19, 2018); *Brandenburg v. Cousin Vinny's Pizza, LLC,* 2018 WL 5800594, at *4 (S.D. Ohio Nov. 6, 2018); *Ke v. Saigon Grill, Inc.,* 595 F.Supp.2d 240, 258 (S.D. N.Y. Oct. 21, 2008).

Here, Plaintiff's vehicle used to make pizza deliveries during his employment with Defendant qualifies as a tool of the trade. Defendant paid its delivery drivers, like Plaintiff, the IRS standard business mileage rate to *reimburse* drivers for a reasonable approximation of their vehicle costs associated with making deliveries, not as compensation for work. For instance, the pay stub from pay period 12/24 to 12/30/2018, depicted under the Facts section, *supra*, shows a "Vehicle Reimbursement" of $323.64. This is the amount the driver is actually paid for vehicle reimbursement, minus taxes and other withholdings for wages. Declaration of Clark, ECF, 86-1 at 1. Defendant entered $323.64 because the federal mileage reimbursement rate at the time was .58 per mile. *Id.* at 2. Plaintiff made 199 deliveries for the week in question and was paid for 2.8 miles per delivery, which equals approximately 558 miles. 558 miles x .58 equals $323.64. This formula was created to ensure delivery drivers were paid at least 2.5 miles per delivery. *Id.* at 1.

While it is true that if the employer makes an unreasonable approximation, the employee can claim that his wage rate was reduced because his expenses were not sufficiently reimbursed,

Plaintiff has not made that argument here. Nor has Plaintiff offered any reasons why expenses should be treated differently for purposes of the minimum wage than they should be for purposes of overtime. *See, e.g., Donovan v. KFC Servs., Inc*., 547 F.Supp. 503 (E.D.N.Y.1982) (Congress and the Department of Labor intended that the term "wages" have the same definition for purposes of the Equal Pay Act as for purposes of the FLSA's overtime and minimum wage provisions).

Plaintiff is not entitled to summary judgment on this issue. As a matter of law, mileage reimbursement in his "paycheck" should not be classified as wages under these circumstances. *See, e.g., Perrin,* 114 F. Supp. 3d at 712 (stating that "the regulations allow an employer to reasonably approximate the amount of an employee's vehicle expenses without affecting the amount of the employee's wages for purposes of minimum wage compliance"); *Wass v. NPC International,* 688 F.Supp.2d 1282, 1287 (D. Kan. Mar. 2, 2010) (finding employer was entitled to reimburse employees working as pizza delivery drivers for their vehicle expenses by reasonably approximating those expenses, without affecting the amount of their wages for purposes of applying the FLSA's minimum wage provisions); *Powell v. Carey International, Inc.*, 514 F. Supp. 2d 1302, 1320 (S.D. Fla. Feb. 1, 2007) (holding that employer's fuel surcharge, which was charged to customers and reimbursed to employee limousine drivers, constituted a reimbursement for fuel expenses, and as such, the surcharge was not part of employee drivers regular rate of pay).

Liquated Damages

Finally, Plaintiff seeks summary judgment on the issue of liquidated damages.

Plaintiff argues that the statute of limitations of three years applies under FSLA, and he is entitled to an award of liquated damages. The applicable statute of limitations is found in 29

19

U.S.C. § 255 (the Portal-to-Portal Act), which provides that FLSA claims "shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years." 29 U.S.C. § 255(a).

*Willfulness*

A violation of the FLSA is deemed willful if the employer either "'knew of or showed reckless disregard for'" the question of whether its conduct was prohibited by the statute. *Jarrett v. ERC Props.,* 211 F.3d 1078, 1082 (8th Cir. 2000) (quoting *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133 (1988)). The question of whether an FLSA violation is willful is an issue of fact. *Id.* at 135; *Littlefield v. Dealer Warranty Servs., LLC*, 679 F. Supp. 2d 1014, 1019 (E.D. Mo. 2010). Plaintiff bears the burden of demonstrating willfulness, and this determination is wholly separate from the analysis applicable to an award of liquidated damages. *See Brown v. Fred's, Inc.,* 494 F.3d at 736, 743 (8th Cir. 2007).

Plaintiff asserts that Defendant did nothing to ensure it was in compliance with FSLA and MMLW, fabricated paystubs to create the appearance of legally compliant pay and recordkeeping practices, improperly claimed a tip credit, and failed to properly keep accurate time records. Defendant disagrees. For instance, Defendant argues that it did several things to ensure it was in compliance. Defendant routinely checked federal guidelines to ensure they were paying the current mileage reimbursement rate. Declaration of Clark, ECF No. 86-1 at 2. Defendant also kept up with developments in minimum wage changes by checking the Missouri DOL website. *Id.* Defendant received guidance on payroll issues from Imo's Pizza Corporate and did its best to implement what it learned. *Id.* Finally, Defendant discussed best practices with respect to payroll with owners of other Imo's Pizza location to try to improve their processes and

ensure compliance with federal and state law with the methodology that Ostrovskiy created.

Based on the record before it, the Court concludes that it cannot say, as a matter of law, that Plaintiff is entitled to judgment on the issue of willfulness. Generally, "[w]hether a violation is willful is a question of fact." *Arnold v. DirecTV, LLC*, 2017 WL 1196428, at *14 (E.D. Mo. Mar. 31, 2017) (citing *Koenig v. Bourdeau Const. LLC*, 2013 WL 5876712, at *3 (E.D. Mo. Oct. 31, 2013) (collecting cases)). The parties dispute the scope and accuracy of Defendant's investigation into being complaint with the requirements under FSLA. Ultimately, a jury could find that Defendant either did not know or show "reckless disregard for the matter of whether its conduct was prohibited by the statute." *Drake v. Steak N Shake Operations, Inc.,* 2018 WL 3625769, at *2 (E.D. Mo. July 30, 2018) (quoting *Jarrett*, 211 F.3d at 1082). Therefore, a genuine issue of material fact exists, and summary judgment is not appropriate.

*Good Faith*

FLSA violations are subject to additional liquidated damages equal to the amount of unpaid overtime compensation, unless "the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that [it] had reasonable grounds for believing that [its] act or omission was not a violation." 29 U.S.C. §§ 216(b), 260. The award of liquidated damages is not considered punitive but is "intended in part to compensate employees for the delay in payment of wages owed under the FLSA."  *Hultgren v. County of Lancaster, Neb.,* 913 F.2d 498, 509 (8th Cir.1990) (citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945)). "An award of liquidated damages under section 216(b) is mandatory unless the employer can show good faith and reasonable grounds for believing that it was not in violation of the FLSA." *Jarrett,* 211 F.3d at 1084; *Braswell v. City of El Dorado, Ark.,* 187 F.3d 954, 957 (8th Cir. 1999) (citing *Hultgren,* 913 F.2d at 508–09); *See also, Joiner v.*

*City of Macon,* 814 F.2d 1537, 1539 (11th Cir. 1987) ("the district court's decision whether to award liquidated damages does not become discretionary until the employer carries its burden of proving good faith. In other words, liquidated damages are mandatory absent a showing of good faith."); *see also* 29 U.S.C. § 260. It is well established that the willfulness standard employed in determining the statute of limitations for FLSA claims is distinct from the good faith standard applicable to the issue of liquidated damages. *Brown,* 494 F.3d at 743.

To avoid an award of liquidated damages, the employer bears the burden of establishing, by "plain and substantial" evidence, both subjective good faith and objective reasonableness. *See Chao v. Barbeque Ventures, L.L.C.*, 547 F.3d 938, 941–942 (8th Cir. 2008) (*quoting Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999)). The employer must establish "an honest intention to ascertain and follow the dictates of the FLSA." *Chao*, 547 F.3d at 942 (quoting *Hultgren,* 913 F.2d at 509). "To carry his burden, a defendant employer must show that he took affirmative steps to ascertain the Act's requirements, but nonetheless, violated its provisions." *Id.* (quoting *Martin v. Cooper Elec. Supply Co.,* 940 F.2d 896, 908 (3d Cir. 1991)).

Plaintiff's failure to carry his burden of proving willfulness does not require a finding that Defendant satisfied its substantial burden to show that it acted with subjective good faith and objective reasonableness. A finding that an employer failed to prove good faith does not necessarily require a finding that the employer acted willfully; nor does a finding that the employee failed to prove a willful violation require a finding that the employer acted in good faith. *See Rodriguez v. Farm Stores Grocery, Inc.,* 518 F.3d 1259, 1274 (11th Cir. 2008); *cf. Broadus v. O.K. Indus., Inc.,* 226 F.3d 937, 944 (8th Cir. 2000) (holding in an employment discrimination case under the Equal Pay Act that "[t]he jury's decision on willfulness is distinct from the district judge's decision to award liquidated damages").

22

Although Defendant presented Clark's Declaration in support of its effort to ascertain its obligations under FLSA as discussed in the prior section regarding willfulness, her Declaration without more, is insufficient to satisfy Defendant's burden to show "plain and substantial" evidence of subjective good faith and objective reasonableness and is more appropriately reserved to the jury for determination of credibility.

As explained above, the Court cannot say that Plaintiff has carried his burden of proving Defendant willfully violated the FSLA and declines to grant summary judgment to Plaintiff on the issue of liquidated damages. If the jury finds a violation of the FLSA, the Court will have an opportunity to rule on the question of good faith at that time, and the benefit of a fully developed record to aid in the exercise of its discretion. For this reason, this portion of Plaintiff's motion for summary judgment will be denied.

*MMLW Statute of Limitations*

Plaintiff also argues that under Missouri law, the applicable statute of limitations is three years and does not require a finding of willfulness or good faith like FSLA does. Defendant does not respond, or even acknowledge, Plaintiff's argument in its response.

Effective November 6, 2018, the applicable Missouri statute states:

> Any employer who pays any employee less wages than the wages to which the employee is entitled under or by virtue of sections 290.500 to 290.530 shall be liable to the employee affected for the full amount of the wage rate and an additional amount equal to twice the unpaid wages as liquidated damages, less any amount actually paid to the employee by the employer and for costs and such reasonable attorney fees as may be allowed by the court or jury. The employee may bring any legal action necessary to collect the claim. Any agreement between the employee and the employer to work for less than the wage rate shall be no defense to the action. *All actions for the collection of any deficiency in wages shall be commenced within three years of the accrual of the cause of action.*

Mo. Rev. Stat. § 290.527 (emphasis added).

The Missouri DOL has promulgated regulations providing that except as otherwise

provided by Missouri law, the interpretation and enforcement of the MMWL follows the Federal Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. section 201, et seq. *See* Mo. Rev. Stat. § 290.505.4; 8 C.S.R. 30–4.010(1) (2010).

The Court finds that the applicable statute is clear, and a three-year statute of limitations with no exception for good faith or willfulness defenses applies under Missouri law as of November 6, 2018.

**Conclusion**

For the reasons set forth above, Plaintiff's Motion for Summary Judgment will be granted in part and denied in part. This case is currently set for a jury trial on September 19, 2023 at 9:00 A.M. A final pretrial conference is scheduled for September 14, 2023 at 1:30 P.M. The Court will order a telephone status conference to be held between the parties on August 25, 2023 at 11:00 A.M.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Joseph Tierney's Motion for Summary Judgment [ECF No. 77] is **GRANTED IN PART** and **DENIED IN PART.**

**IT IS FURTHER ORDERED** that a telephone status conference is set for Friday, August 25, 2023 at 11:00 A.M. Counsel are directed to call the conference line toll free at **1-877-810-9415**. The access code to enter the telephone conference is: **7519116**.

Dated this 23rd day of August, 2023.

**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**